**K & S OIL WELL SERVICE, INC.,**
Appellant,

v.

**CABOT CORPORATION, INC., et al.,**
Appellees.

No. 679.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1973.

Rehearing Denied March 22, 1973.

---

9. Bell v. Bradshaw, 342 S.W.2d 185 (Tex. Civ.App., Dallas 1960, no writ) ; Gass v. Baggerly, 332 S.W.2d 426 (Tex.Civ.App., Dallas 1960, no writ).

House, Mercer, House & Breck, R. L. House, San Antonio, for appellant.

Fulbright, Crooker & Jaworski, James B. Sales, Houston, for Cabot Corp.

Jamail & Gano, John Gano, Houston, for Alvin Ray Morton.

## OPINION

NYE, Chief Justice.

This is a products liability case. The main issue on appeal is indemnity. The suit was filed by an injured workman to enforce strict liability against the manufacturer of an allegedly defective workover rig. The manufacturer claims contractual indemnity from the purchaser of the rig. The jury answered issues favorable to the workman and against the manufacturer. Judgment was rendered against the purchaser based on the indemnity agreement. The purchaser appeals and questions the trial court's construction of the indemnity agreement.

On or about the 4th of March 1970 the Cabot Corporation, Inc. manufactured and sold a new workover rig to K & S Oil Well Service, Inc. A specific contract was signed by the President of the Purchaser (K & S) and a duly authorized agent of the manufacturer (Cabot). Alvin Ray Morton was employed as a driller on the rig purchased by K & S from the manufacturer (Cabot). In early July, 1970, Morton received extensive injuries while working on the rig. The travelling block, which weighed approximately two tons, broke loose from the mast of the rig and struck Morton on the face and upper portion of his body. Morton was working beneath the crown on the wellhead which was located underneath the rig.

■ Morton filed suit against the manufacturer (Cabot) to recover damages for injuries he received in the accident. The suit was based on negligence and strict liability. The evidence showed that the manufacturer (Cabot) was regularly engaged in the business of designing, manufacturing and selling workover rigs. The particular rig in question had been sold to the purchaser (K & S) under a written purchase agreement. The case was tried before a jury. The jury found defects in the

manufacturer's rig which were the producing cause of Morton's injuries. The law is that a manufacturer is strictly liable in tort if he places in commerce a defective product which renders dangerous the life or limb of one who sustains injury because of the defective condition. Darryl v. Ford Motor Company, 440 S.W.2d 630 (Tex. Sup.1969).

■ The personal relationship between the manufacturer and the purchaser, which was standard at the time much of the sales law was initially established, is no longer standard. In a great many instances there is no relationship at all. Products have now become considerably more complex to the point where in a vast number of instances the purchaser or user does not have the slightest idea of the product's content or construction. The law which has developed concerning strict liability is based upon an action in tort and does not depend upon the existence of privity of contract or privity of warranty. Liability is based upon consideration of public policy. In Texas we look to the rule announced in the Restatement of the Law of Torts, § 402A, which provides that:

"(1) One who sells any product in a *defective condition unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user . . . ., if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The product (rig) was manufactured by the appellee. It was being used for its in-

tended purpose. The plaintiff showed that the product was defective. The jury awarded damages to Morton for his injuries in the amount of $238,600.00. There is no challenge as to the sufficiency of the evidence supporting the jury issues on liability.

Liberty Mutual Insurance Company, the workmen's compensation carrier, intervened in the suit to the extent of $7281.37. This was the amount of workmen's compensation it had paid to Morton. The manufacturer filed a third-party action against the purchaser (K & S, who was Morton's employer), seeking indemnity based on the terms of the sales contract executed by the purchaser and manufacturer, at the time the sale of the workover rig was made. The trial court entered judgment in favor of Morton against the manufacturer. The trial court granted the manufacturer full indemnity against the purchaser (K & S), allowing Liberty recovery for the amount it had paid as workmen's compensation out of the judgment. The purchaser appeals, contending that the manufacturer is not entitled to indemnity under the terms of the contract for a number of reasons, each represented by a separate point of error.

The sale of the rig was made pursuant to a sales order form prepared by the manufacturer (Cabot) on two pages. It lists the component parts of the workover rig calling for a purchase price of $71,892.85. At the bottom of the second page of the purchase order there is a statement in ordinary, but slightly smaller type, which says: "subject to the terms and conditions on the reverse side". Directly beneath this statement appear the signatures of the purchaser "K & S Well Service, Inc. By Lynn G. Stanley" and the manufacturer "CABOT CORPORATION, Machinery Division By: Bill Read, Salesman". Because of the nature of the indemnity provision that appears on the opposite side, we deem it necessary to copy all of the reverse side of the sales order form so that all of the language used can be considered. It appears as follows:

## TERMS AND CONDITIONS

1. In this period of fluctuating and uncertain prices from our suppliers, this order is agreed upon with the understanding that it may be necessary to adjust the quoted price of components in our equipment to accord with the prices at the time of delivery of the equipment.

2. Delivery dates quoted are approximate, and contingent on fires, strikes, accidents, shortages of labor or materials, orders or requests of governmental authorities and other similar or dissimilar causes beyond our control. Deliveries to our customers may be prorated.

3. Excise taxes and sales taxes shall be in addition to the quoted price, unless such addition is prohibited by law.

4. WARRANTY—We warrant, for a period of ninety (90) days from date of delivery, that the workmanship and material in the equipment are of good quality and that when prudently used and not damaged through lack of skill or negligence, the equipment is MERCHANTABLE and will perform the functions for which it was designed; OUR LIABILITY BEING ALWAYS LIMITED TO REPLACEMENT OF PARTS OR CORRECTION OF DEFECTS FREE OF CHARGE. THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES OR REPRESENTATIONS, EXPRESSED OR IMPLIED. COMPONENT PARTS OF OUR EQUIPMENT MANUFACTURED BY OTHERS ARE NOT WARRANTED BY US BUT CARRY ANY WARRANTY OF THE MANUFACTURER OR SUPPLIER. WE SHALL NOT BE LIABLE FOR INDIRECT, SPECIAL, GENERAL OR CONSEQUENTIAL DAMAGES OR INJURIES AND YOU AGREE TO INDEMNIFY US FROM LOSS, INJURY OR DAMAGE TO THIRD PARTIES. NO WARRANTY, EXPRESS OR IMPLIED, IS MADE ON USED EQUIPMENT.

5. This order shall not be binding until accepted by Cabot Corporation at its Pampa, Texas office.

6. The terms and conditions hereon cannot be altered or changed, except in writing by an officer of the corporation.

CABOT CORPORATION
Machinery Division
Pampa, Texas

The "terms and conditions" on the back of the sales receipt contained six numbered paragraphs or clauses. In brief, these clauses concern the fact that: (1) The quoted prices might vary at time of delivery; (2) the delivery dates are approximate; (3) the excise and sales taxes are added to quoted prices; (4) there is an express warranty (and indemnity) provision; (5) the order is not binding until accepted by Cabot; and (6) there will be no alteration of terms unless in writing by an officer of the corporation.

The indemnity aspect of this case is covered in one sentence in paragraph 4. It is the only paragraph that bears a title or label. It is called "WARRANTY", not indemnity! These two terms are different and unrelated. Compare 24 B.L.R. 643. Each must be considered according to its own rules and law.

> Warranty is "A promise that a proposition of fact is true." A warranty on the sale of personal property is "A statement or representation made by the seller of goods, contemporaneously with and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality, or title of the goods, by which he promises or undertakes that certain facts are or shall be as he then represents them." Black's Law Dictionary, Fourth Edition.

Indemnity, on the other hand, is altogether different from warranty. It has been defined by Black as:

> "A collateral contract or assurance, by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person."

The salesman for the manufacturer had been dealing with K & S for a long time and had sold them several new rigs. There was evidence that they had been using the same type of receipt containing the same clauses for some time. There was testimony by the President of K & S who executed the above receipt, indicating that he did not know of the indemnity agreement, although he was aware of the 90-day warranty provision. There is some evidence that the manufacturer's salesman did not know of the indemnity provision. It is unclear from the record whether the indemnity provision was ever brought to the attention of the purchaser K & S. But be that as it may, only the relevant provisions of the written contract can be considered in arriving at its intent and meaning. Our consideration of the indemnity portion is limited to the written terms of the contract which must speak for itself. We cannot consider parol evidence, since it is not admissible to show the intent of the parties at the time they executed the agreement. Sira & Payne, Inc. v. Wallace & Riddle, 484 S.W.2d 559 (Tex.Sup.1972).

Reviewing then all of the terms of the contract, it is obvious that the trial court granted the manufacturer full indemnity from the purchaser (K & S) for the amount of the judgment based on the language in the one sentence: "We shall not be liable for indirect, special, general or consequential damages or injuries and you agree to indemnify us from loss, injury or damage to third parties."

The rule that an indemnity agreement will not protect the indemnitee against the consequence of his own negligence unless the obligation is expressed in unequivocal terms, is to prevent injustice. Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957). A contracting party should be upon fair notice that under his agreement, and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party. Joe Adams & Son v. McCann Construction Co., 475 S.

W.2d 721 (Tex.Sup.1972). See also Perry v. Payne, 217 Pa. 252, 66 A. 553 (1907). We believe that in a sales order, "fair notice" should also include conspicuousness of the indemnity agreement to prevent an obvious injustice. The indemnity provision was hidden. It was located on the reverse side of a "Sales Order". It was under a heading "Terms and Conditions". It was in the fourth paragraph entitled "Warranty". Completely unrelated terms surrounded it. Unless the agreement is a specific indemnity contract which clearly shows the contracting parties that it is intended that the indemnitor will be liable for damages resulting from the negligence of the indemnitee, the indemnity agreement must be conspicuous. We hold that the indemnity provision in this "Sales Order" was not conspicuous as a matter of law so as to import fair notice to the indemnitor. Compare 2.316 U.C.C. (b).

■ The law looks with disfavor upon attempts of a party to avoid liability for his own fault and, although it is permissible in many cases to contract one's self out of liability for negligence, the courts insist that it must be absolutely clear that such was the understanding of the parties. To accomplish this end, the first requirement is that the negation be clear. By the latest decisions and in the majority of jurisdictions, this is meant that the term negligence or fault must be used.

Texas, as well as a majority of other jurisdictions, stand for the general rule that a contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms. Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co., Tex., 490 S.W.2d 818. The Supreme Court said, through Justice Daniel:

"We have, in fact, progressed toward the so-called 'express negligence' rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence . . . ."

It is fairly easy to discern an intention on the part of one party to protect himself from the consequences of his own negligence when those words of clear import are stated. It is where the term "negligence" is not used that the intent is not so clear. In looking for the intention of the parties in this case, it is not so much as what this particular instrument says, it is the lack of reference in the instrument explicitly defining the consequences of the indemnitee's acts in unequivocal terms so that the indemnitor would be fully aware of his responsibilities.

Here the agreement does not have a specific hold harmless provision in it as the Supreme Court suggests. It does not say that the indemnitor undertakes to indemnify the manufacturer against liability for injuries or damages caused by defects on the workover rig or apparatus. It does not say that the purchaser will indemnify the manufacturer from all liability connected in the performance of the purchaser's work. It does not attempt to indemnify the manufacturer from the specific operations of drilling or from defects of the instrumentality itself. The instrument does not say that as a result of this sale and because of the manufacturing processes in which defects may occur, the purchaser will nevertheless indemnify the manufacturer from any such defect in the equipment caused by the fault of the manufacturer in the manufacturing process or from other breach of duty on the part of the manufacturer. The instrument does not speak of the actual or potential risks and dangers to be assumed and accepted by the purchaser which may or may not have been known by the manufacturer, whether the defect was caused or claimed to be

caused by the negligence on the part of the manufacturer, its employees, agents or other persons connected with the sale of the product or not. In other words, the simple broad general statement in the indemnity obligation in this instance does not meet the tests laid down by our courts. Joe Adams & Son v. McCann Construction Co., supra.

■ Exculpatory or indemnity clauses which attempt to free an actor from liability for his own negligence are basically valid but must be strictly construed. The failure to state an attempted indemnity in plain unambiguous and clear terminology will result in an interpretation that the clause was not intended to exempt the party from liability for his own negligence. Considering all of the provisions of the contract, we hold that the necessary clear and unequivocal language to indemnify the appellee Cabot against the consequence of its own negligence is not present. Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co., supra. Appellant K & S's Points Five through Twelve are sustained.

Appellant complains that the trial court erred in overruling and in not sustaining appellant K & S's motion to dismiss and/or grant its plea in abatement against the third party action of Cabot. Appellant K & S contends that the court erred in this regard because Cabot had stated that it was the indemnity agreement it was relying upon to relieve it of its loss, and until Cabot had actually suffered a loss, it had no cause of action. Appellant argues that the right to indemnity does not arise until the obligation is discharged by the party secondarily liable. Citing Shell Petroleum Corp. v. Tippett, 103 S.W.2d 448 (Tex.Civ.App.—Austin 1937, writ ref'd).

■ Some jurisdictions require that the indemnitee prove actual, rather than potential liability to the plaintiff before he can recover from the indemnitor. An analysis of the purported indemnity provision in question here, reveals that at most it is an indemnity against liability, rather than an indemnity against loss or damage. In the case before us the loss and damage to Morton occurred when he was injured. The contract did not restrict indemnity for loss suffered by Cabot prior to bringing a third party action against appellant K & S. Third party actions based on contractual indemnity against liability may be brought prior to the time judgment is rendered against the indemnitee. Laing v. Hanson, 36 S.W. 116 (Tex.Civ.App.1896); Mitchell's, Inc. v. Friedman, supra; Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (Tex.Sup. 1958); Pan American Gas Co. v. Natural Gas Const. Corp., 418 S.W.2d 380 (Tex. Civ.App.—Waco 1967, n. r. e.). See Hernandez v. Great American Ins. Co. of N. Y., 464 S.W.2d 91 (Tex.Sup.1971). The argument of the appellant K & S demanding that the indemnitor bring a subsequent suit after judgment or settlement would contravene the policy of the courts to encourage settlements and to minimize litigation. Palestine Contractors, Inc. v. Perkins, 375 S.W.2d 751 (Tex.Civ.App.— Houston 1964) reversed on other grounds, 386 S.W.2d 764 (Tex.Sup.1964). See Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co., supra. These points are overruled.

■ Appellant's point of error number 41 which states "The Court erred in rendering judgment in favor of Morton on Special Issues Nos. 2, 4 and 7, all of which are on the theory of producing cause" is too general, too broad, multifarious and fails to direct the court's attention to any specific error. Rule 418, Texas Rules of Civil Procedure. This point is overruled.

All of appellant's other points have been considered and are overruled because they are either without merit or they have become moot as a result of our holdings herein. The judgment of the trial court is reversed and judgment is here rendered for plaintiff Alvin Ray Morton against appellee Cabot Corporation, Inc. for the full

amount of judgment, interest and costs, less the amount awarded by the trial court to intervenor Liberty Mutual Insurance Company.

The trial court's judgment is reversed and rendered in part and affirmed in part.