**GOODYEAR TIRE AND RUBBER COMPANY, Petitioner,**

v.

**JEFFERSON CONSTRUCTION COMPANY, Respondent.**

No. B–6929.

Supreme Court of Texas.

April 26, 1978.

Rehearing Denied June 14, 1978.

Strong, Pipkin, Nelson, Parker & Powers, William B. Coffey, Jr., Beaumont, for petitioner.

Weller, Wheelus & Green, Kyle Wheelus, Jr., Beaumont, for respondent.

DENTON, Justice.

This is a third party action on a contract of indemnity brought by Goodyear Tire and Rubber Company against Jefferson Construction Company. At issue is whether fair notice was given of the existence of an indemnity clause in a contract between the parties, and whether the indemnity provision was clear and unequivocal in its terms. After a nonjury trial, the trial court rendered judgment granting the requested indemnity. The court of civil appeals reversed and rendered judgment denying indemnity. 552 S.W.2d 596. We hold that Goodyear was entitled to indemnity under the contract, and accordingly reverse the judgment of the court of civil appeals and affirm that of the trial court.

Jose Negrete was employed by Jefferson Construction Company (Jefferson) and was working on the premises of Goodyear Tire and Rubber Company (Goodyear) on December 8, 1972, when he sustained injuries during the course of his employment. Negrete received workmen's compensation benefits and then filed suit for damages against Goodyear, alleging that his injuries resulted from Goodyear's sole negligence. Goodyear filed this cross action against Jefferson for contractual indemnity, settled the claim with Negrete, and amended its pleadings to recover the amount of the settlement from Jefferson.

Jefferson had done maintenance work at the Goodyear plant since 1961 pursuant to monthly purchase orders sent by Goodyear to Jefferson. These orders were printed forms, designed primarily for the purchase of goods. It is undisputed that the purchase orders served as the contract between the parties, although they were often not received by Jefferson until after the specified work had already commenced. Two identical pages of the form were generally used every month. In large red print on the front of each page in question here, the form says "Important Notice To Seller" and states that the purchase order is made expressly subject to the terms and conditions on the reverse side. On the front of the first page of the form, Goodyear had typed items specifying the price basis for the work to be done in December, 1972. On the front of the second page were several typed

paragraphs, the last of which required Jefferson to carry a certain amount of liability insurance "with respect to the 'hold harmless' provisions of the terms and conditions of this purchase order." The back of each page is headed "Terms and Conditions" and contains 21 numbered paragraphs in fine print. Paragraph 13, is the "hold harmless" section, and provides in part:

> (13) To the extent that this Purchase Order calls for work to be performed upon property owned or controlled by Purchaser [Goodyear], it is agreed that . . .
>
> (d) Seller [Jefferson] will indemnify, save harmless and defend Purchaser from all liability for loss, damage or injury to person or property in any manner arising out of or incident to the performance of this Purchase Order . . .
>
> (f) To the extent that this Purchase Order provides that Seller will indemnify, save harmless and defend Purchaser from liability, claims, demands or suits, *it is the intention of Seller that such indemnity shall apply whether or not the liability, claims, demands or suits arise from the negligence of Purchaser.*

(Emphasis added). The evidence showed that of the 115 monthly purchase orders Goodyear had sent to Jefferson prior to December, 1972, only the last eight contained paragraph 13(f). Paragraph 13(d) or a similar "save harmless" provision appeared in all of the purchase orders admitted into evidence, dating back to the form used in 1962.

After suit was brought by Negrete against Goodyear for its sole negligence, Goodyear contended that Jefferson had agreed to indemnify it against the consequences of Goodyear's own negligence. Jefferson, on the other hand, asserted that the indemnity clause in the applicable purchase order was not binding on it for two reasons: (1) The obligation to indemnify Goodyear from the consequences of its own negligence was not expressed in clear and unequivocal terms. (2) No fair notice of the indemnity clause was given because it was obscurely located in fine print on the back of the form and was recently included in the form without warning from Goodyear. The trial court rendered judgment granting indemnity to Goodyear. The trial was to the court, but no findings of fact or conclusions of law were requested or filed.

The court of civil appeals passed on only the latter of Jefferson's two contentions stated above. It held that Jefferson was not given fair notice of the existence of the indemnity provision because it was hidden in fine print on the back of the form and because the paragraph was inserted by Goodyear without negotiation, warning, notice, or knowledge. The court of civil appeals therefore reversed and rendered judgment that Goodyear take nothing.

Goodyear now asserts that the court below erred because there is evidence in the record to support the trial court's implied findings of fair notice and actual knowledge of the existence of the indemnity provision. It is clear that where no findings of fact or conclusions of law are requested or filed, the trial court's judgment implies all necessary fact findings in support of the judgment. *Buchanan v. Byrd*, 519 S.W.2d 841 (Tex.1975); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing the record to determine if any evidence supports the judgment and concomitant implied findings, it is proper to consider only the evidence favorable to the issue and to disregard all evidence or inferences to the contrary. *Renfro Drug Co. v. Lewis, supra.* Of course, a fact finding may not be inferred if no evidence supports it. *Warren Petroleum Corp. v. Martin*, 153 Tex. 465, 271 S.W.2d 410 (1954).

The first question presented is whether Jefferson had actual notice or knowledge of the existence of the indemnity provision. Goodyear contends that there is some evidence to support the trial court's implied finding of actual notice and that therefore the judgment of the trial court cannot be disturbed. Notice is generally a question of fact and can be decided as a matter of law only when there is no room

for reasonable minds to differ. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146 (1950).

■ The evidence showed that Jefferson rendered maintenance services to Goodyear on a continuing basis and work was often done before the actual purchase order was received by Jefferson. Both parties agreed, however, that each purchase order was a written confirmation of their agreement and constituted their contract. Both the president and vice-president of Jefferson testified that they were aware of the existence of contract provisions on the reverse side of each purchase order. The vice-president, Mr. Hawkins, testified that he had probably read some of the provisions on the back side of the form, but he could not say which parts he had read, if any. Mr. Henson, the president of Jefferson, also testified that he had read parts of the back of the purchase order. When asked at his deposition if he had ever read Paragraph 13(f), Henson initially said "no," but then said "I probably did, but I don't remember." At trial, Henson stated "Well, I'm not sure. I'm pretty sure that I've read the entire writing on the back." Jefferson contends that it was not shown *when* its officers read a part of the back of the purchase order, whether before or after the occurrence of Negrete's injuries, or whether they had read a prior form not containing Paragraph 13(f). Jefferson's contentions are essentially based on evidence which is contrary to that supporting the trial court judgment. It was the duty of the trial judge as the trier of fact to weigh the conflicting evidence as to the actual knowledge possessed by Jefferson's officers. The testimony of both officers was that they were aware of contract provisions on the back of the purchase order. This evidence, together with the president's statement that he had probably read Paragraph 13(f), constitutes some evidence of actual notice or knowledge on the part of Jefferson. It was therefore improper to set aside the judgment of the trial court based on the issue of actual notice.

The second question presented is whether fair notice was given of the existence of the indemnity provision. This Court has said:

[A]n indemnity agreement will not protect the indemnitee against the consequence of his own negligence unless the obligation is expressed in unequivocal terms. The obvious purpose of this rule is to prevent injustice. A contracting party should be upon fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party.

*Spence & Howe Construction Co. v. Gulf Oil Corp.*, 365 S.W.2d 631, 634 (1963); *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818 (Tex.1972). In connection with indemnity agreements, such as here, which protect the indemnitee against the consequences of his own negligence, the fair notice requirement has been interpreted to include conspicuousness of the provision. In *K & S Oil Well Service, Inc. v. Cabot Corp.*, 491 S.W.2d 733 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.), the court held that an indemnity provision was not conspicuous and was therefore unenforceable because it was hidden on the reverse side of a sales order under a paragraph entitled "Warranty" and was surrounded by completely unrelated terms. The only reference to the indemnity provision was on the second page of the form, which said in small type "subject to the terms and conditions on the reverse side."

■ Again, the trial court's judgment is not to be set aside unless there is no evidence to support its implied fact findings. We are required to look at only the evidence favorable to the trial court judgment in determining whether it is supported by some evidence. The evidence showed Jefferson to be a large business concern with gross revenues of approximately four million dollars per annum. Goodyear's purchase of maintenance services from Jefferson was an arm's length commercial transaction. Both parties con-

sidered each purchase order to be the contract governing the respective rights and duties of the parties. It was shown that typed on the second page of the purchase order was a requirement that Jefferson carry public liability and property damage insurance with specified policy limits. This was a regular provision typed into each purchase order with which Jefferson always complied. It specifically referred to the "hold harmless" provision on the reverse side. Also, on the front of each page, there was printed in large red type:

> IMPORTANT NOTICE TO SELLER
> THIS PURCHASE ORDER IS EXPRESSLY MADE SUBJECT TO, AND YOUR ACCEPTANCE IS STRICTLY LIMITED TO, THE TERMS AND CONDITIONS STATED HEREIN, INCLUDING THE TERMS AND CONDITIONS STATED ON THE REVERSE SIDE HEREOF.

The indemnity provisions were contained in Paragraph 13 on the reverse side under the heading "Terms and Conditions." The provisions on the reverse of the form were referred to on the front and constituted a part of the contract of the parties. Goodyear also adduced evidence showing that other parties with whom it dealt had read and objected to Paragraph 13(f). The provision was not, as in *K & S Oil*, hidden by a misleading heading or surrounded by unrelated terms. We hold that under the circumstances of this commercial transaction, there was some evidence that the indemnity provision was conspicuous enough to give Jefferson fair notice of its existence. Because there was evidence of fair notice to support the trial court's implied finding to that effect, the court of civil appeals erred in reversing and denying indemnity *on this* ground.

 Under our holdings thus far, we would reversé the judgment of the court of civil appeals. Under such circumstances, however, we are required to examine the brief of the prevailing party in the court of civil appeals to determine whether there is another ground on which its judgment should be affirmed. *City of Hutchins v.*

*Prasifka*, 450 S.W.2d 829 (Tex.1970); *McKelvy v. Barber*, 381 S.W.2d 59 (Tex. 1964). The ground that Jefferson asserted which the court of civil appeals did not reach was whether the *language* of the indemnity clause gave Jefferson fair notice of its obligation to indemnify Goodyear against the consequences of its own negligence. Fair notice also includes the requirement that such an indemnity obligation be expressed in clear and unequivocal terms. In *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818, 822 (Tex.1972), we said:

> [A] contract of indemnity will not afford protection to the indemnitee against the consequences of his own negligence unless the contract clearly expresses such an obligation in unequivocal terms . . .
> We have, in fact, progressed toward the so-called "express negligence" rule as near as is judicially possible without adopting it and thereby requiring in all cases that the parties state, in so many words, that they intend to save the indemnitee harmless from liability for his own negligence.

*See Sira & Payne, Inc. v. Wallace & Riddle*, 484 S.W.2d 559 (Tex.1972); *Joe Adams & Son v. McCann Construction Co.*, 475 S.W.2d 721 (Tex.1971); *Spence & Howe Construction Co. v. Gulf Oil Corp.*, 365 S.W.2d 631 (Tex.1963). The indemnity provision contained in Paragraph 13(f) said that "it is the intention of the Seller that such indemnity shall apply whether or not the liability, claims, demands or suits arise from the negligence of Purchaser." The obligation of Jefferson to indemnify Goodyear against its own negligence was clearly expressed and even specified that the indemnity covered the *negligence* of the purchaser. We hold that the obligation to indemnify Goodyear against the consequences of its own negligence was clearly expressed by this clause and that its language gave fair notice of the indemnity obligation.

The judgment of the court of civil appeals is reversed and that of the trial court affirmed.