**WEBER ENERGY CORPORATION,**
Appellant,

v.

**GREY WOLF DRILLING COMPANY, Appellee.**

**No. 01–96–01522–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 21, 1998.

Rehearing Overruled July 30, 1998.

Lyle R. Rathwell, Houston, for Appellant.

C. Mark Jefferson, Tina Snelling, Houston, for Appellee.

Before COHEN, O'CONNOR and ANDELL, JJ.

### OPINION

ANDELL, Justice.

Weber Energy Corporation appeals from a summary judgment that it take nothing on its claim against Grey Wolf Drilling Company for contractual indemnity. We affirm.

### Facts

In 1993, the parties executed an International Association of Drilling Contractors (IADC) form contract, under which Grey Wolf agreed to drill a well for Weber. The contract contained mutual indemnity provisions protecting each against suits by the other's employees. In 1994, a Grey Wolf employee sued Weber for personal injuries. After Grey Wolf refused to indemnify Weber, Weber sued. The court granted summary judgment that Weber take nothing. The judgment stated that the indemnity agree-

ments violated the Texas Oilfield Anti–Indemnity Act (the Act). TEX. CIV. PRAC. & REM.CODE ANN. §§ 127.001–.007 (Vernon 1997).

In its sole point of error, Weber contends: (1) the court misconstrued the Act; (2) the contract language satisfies the Act; (3) the judgment thwarts the parties' clear intent; and (4) the judgment abrogates a contract provision used extensively in the industry.

## Analysis

The issue is whether the Act voids the contract's indemnity provisions. The indemnity provisions provide:

18.10 [Grey Wolf]'s Indemnification of [Weber]: [Grey Wolf] agrees to protect, defend, indemnify and save [Weber], its officers, directors, employees and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of [Grey Wolf]'s employees or [Grey Wolf]'s subcontractors or their employees, or [Grey Wolf]'s invitees on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 18.10 (which [Grey Wolf] and [Weber] hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maxi-

mum monetary limits permitted under such law.

18.11 [Weber]'s Indemnification of [Grey Wolf]: [Weber] agrees to protect, defend, indemnify, and save [Grey Wolf], its officers, directors, employees and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties arising in connection herewith in favor of [Weber]'s employees or [Weber]'s contractors or their employees or [Weber]'s invitees other than those parties identified in Paragraph 18.10 on account of bodily injury, death or damage to property. *[Weber]'s indemnity shall be without regard to and without any right to contribution from any insurance maintained by [Grey Wolf], pursuant to Paragraph 16.* If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under Paragraph 18.11 (which [Grey Wolf] and [Weber] hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to *conform* to the maximum monetary limits under such law.

(Emphasis in original.)

As a general rule, the Act voids indemnities like paragraphs 18.10 and 18.11.[1] TEX. CIV. PRAC. & REM.CODE ANN. § 127.003 (Vernon 1997). However, section 127.005 provides an exception to the general rule:

(a) This chapter does not apply to an agreement that provides for indemnity if

---

1. Section 127.003 provides:

(a) Except as otherwise provided by this chapter, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral is void if it purports to indemnify a person against loss or liability for damage that:

(1) *is caused by or results from the sole or* concurrent negligence of the indemnitee, his

agent or employee, or an individual contractor directly responsible to the indemnitee; and

(2) arises from:

(A) personal *injury or death;*

(B) property injury; or

(C) any other loss, damage, or expense that arises from personal injury, death, or property injury.

TEX. CIV. PRAC. & REM.CODE ANN. § 127.003 (Vernon 1997).

the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or (c).[2]

(b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

TEX. CIV. PRAC. & REM.CODE ANN. § 127.005(a), (b) (Vernon 1997). Weber argues the contract meets the requirements of subsection (b) because each party as indemnitor agreed to provide insurance in equal amounts to the other as indemnitee. Grey Wolf concedes that paragraphs 18.10 and 18.11 create mutual obligations to provide insured indemnities to each other, but argues the provisions are void because the insurance obligations under the contract are not equal, and therefore violate section 127.005(b).

Before 1989, section 127.005(a) required each party to agree in writing to support its indemnity obligation with "available" liability insurance. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3319 (amended 1989) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 127.005 (Vernon 1997)); *Greene's Pressure Testing & Rentals v. Flournoy Drilling Co.*, 113 F.3d 47, 51 (5th Cir.1997). The 1989 version of the statute controls this case. *See* Act of May 27, 1989, 71st Leg., ch. 1102, § 3, 1989 Tex. Gen. Laws 4557 (amended 1991) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 127.005 (Vernon 1997)). It limits mutual indemnity obligations to "the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor *has agreed* to provide in equal amounts to the other as indemnitee." *Id.* § 127.005(b) (emphasis added).

Weber contends the contract satisfies the 1989 statute; Grey Wolf argues: (1) the contract does not satisfy the statute because Weber did not expressly agree to any amount of insurance, much less the $16 million to which Grey Wolf agreed; and (2) no such agreement can be implied.

Weber relies on four cases for the proposition that the parties agreed to provide equal amounts of insurance: *Maxus Exploration v. Moran Bros., Inc.*, 773 S.W.2d 358, 361 (Tex. App.—Dallas 1989), *aff'd on other grounds*, 817 S.W.2d 50 (Tex.1991) (applying Kansas law); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1126–27 (5th Cir.1992); *Forest Oil Corp. v. Strata Energy, Inc.*, 929 F.2d 1039, 1044–45 (5th Cir.1991); *Dupre v. Penrod Drilling Corp.*, 788 F.Supp. 901, 906 (E.D.La.1992), *aff'd on other grounds*, 993 F.2d 474, 479 (5th Cir.1993). *Maxus, Campbell*, and *Forest Oil* all interpreted the pre–1989 Act, and each held that when an indemnitor voluntarily bought more insurance than was required by statute to support its indemnity obligation, the indemnitee was entitled to the full amount of coverage purchased. In *Dupre*, the federal district court held that language like that in this case "establishe[d] mutual insurance obligations up to the limits permitted under applicable law." 788 F.Supp. at 906. The district court equated "equal amounts *agreed* upon," *id.* (emphasis added), with "equal amounts of insurance *obtained* . . ." upon signing the contract. *Id.* at 907 (emphasis added).

In the present case, the parties bought equal amounts ($16 million) of insurance. This, Weber claims, shows that " . . . each party as indemnitor has agreed to provide [insurance] in equal amounts to the other party as indemnitee," as required by section 127.005(b). However, the Fifth Circuit has refused to equate insurance voluntarily obtained with the statutory requirement of section 127.005(b) that the parties "ha[ve] agreed" to buy equal amounts of insurance. *Greene's*, 113 F.3d at 52.

In *Greene's*, the Fifth Circuit interpreted the 1989 version of the Act. 113 F.3d at 51. The court found *Maxus* and *Campbell* inapplicable because they interpreted the pre–1989 Act. *Id.* at 52. The *Greene's* court held that under the 1989 version of section 127.005, the indemnity was "void because there was never an agreement to purchase equal amounts of insurance, as is currently

---

**2.** Subsection (c), which relates to a unilateral indemnity obligation, is not applicable here.

required" by section 127.005(b).[3] *Id.* at 52. The contract in *Greene's* required only the contractor (Greene's), and not the operator (Flournoy), to purchase a specific amount of insurance. *Id.* at 51. In fact, the operator, Flournoy, purchased almost twice as much insurance as did the contractor, Greene's, the party for whose benefit chapter 127 was enacted. *Id.* at 52, n. 6; *see* TEX. CIV. PRAC. & REM.CODE ANN. § 127.002(a) ("The legislature finds that an inequity is fostered on certain contractors by the indemnity provisions in certain agreements pertaining to wells for oil, gas, or water....."). Nevertheless, the *Greene's* court held "The voluntary procurement of insurance [did] not transform an otherwise invalid indemnity agreement into a valid one." *Id.* at 52.

The case before us is similar to *Greene's*. Paragraph 16 of the contract provides:

> During the life of the Contract, [Grey Wolf] shall at [Grey Wolf]'s expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed and satisfactory to [Weber], Insurance coverage of the kind and in the amounts set forth in Exhibit "A", *insuring the liabilities specifically assumed by* [Grey Wolf] *in Paragraph 18 of this Contract.* [Grey Wolf] shall if requested to do so by [Weber], procure from the company or companies writing said insurance a certificate or certificates satisfactory to [Weber] that said insurance is in force and effect and that the same shall not be canceled or materially changed without ten (10) days prior written notice to [Weber]. For liabilities assumed hereunder by [Grey Wolf], its insurance shall be endorsed to provide that the underwriters waive their rights of subrogation against [Weber]. [Weber] will, as well, cause its insurer to waive

subrogation against [Grey Wolf] for liability it assumes.

(Emphasis in original.) Exhibit "A" requires Grey Wolf to buy a one million dollar personal injury policy and a $15 million umbrella policy. Thus, the contract expressly requires Grey Wolf to purchase $16 million dollars in insurance, but it does not expressly require Weber to do so.

Nevertheless, Weber contends the following language, which appears in both paragraphs 18.10 and 18.11, raises an implied mutual, reciprocal, and identical obligation:

> If it is judicially determined that the *monetary limits of insurance required hereunder* or of the indemnities voluntarily and mutually assumed under Paragraph 18.10 [and 18.11] (which [Grey Wolf] and [Weber] hereby agree will be supported either by available liability insurance, *under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole*) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits under such law.

(Emphasis added). The law sets no maximum limit for insurance under a mutual indemnity obligation,[4] so the language in the savings clause is meaningless. Moreover, as stated above, there is no "monetary limit of insurance required hereunder," *i.e.,* expressly required in the contract, from Weber.

We adopt the rationale of the Fifth Circuit in *Greene's* and hold the indemnity provisions are void because the contract obligates Grey Wolf to purchase $16 million of insurance to support its indemnity obligation but it does not obligate Weber to do so. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 127.005(b) (Vernon 1997); *Greene's,* 113 F.3d at 52.

**3.** Weber contends *Dupre* and *Greene's* are in conflict. There is no conflict between the Fifth Circuit opinions in *Dupre* and *Greene's* because the *Dupre* opinion never even mentioned the Texas Anti–Indemnity Act. In *Greene's,* the Fifth Circuit did not cite either its own opinion in *Dupre* or the district court's. There was no reason to do so because the Fifth Circuit affirmed *Dupre* on unrelated grounds. If the Fifth Circuit's opinion in *Greene's* conflicts with the dis-

trict court's opinion in *Dupre,* the district court's *Dupre* opinion is no longer good law in federal court. Because the issue is one of Texas law, the federal court opinions are merely advisory to us.

**4.** The Act sets a $500,000 limit for "a unilateral indemnity obligation." TEX. CIV. PRAC. & REM.CODE ANN. § 127.005(c) (Vernon 1997).

We overrule the sole point of error and affirm the judgment.

COHEN, J., concurring.

COHEN, Justice, concurring.

I agree with the majority opinion. I write only to point out the irony that a statute meant to protect oil field contractors may not be doing so, as in the case of *Greene's*, or it may be protecting them in circumstances far different from what the legislature intended.

In *Greene's Pressure Testing & Rentals v. Flournoy Drilling Co.*, 113 F.3d 47 (5th Cir. 1997), the party seeking and denied indemnity was the contractor, Greene's. The present parties tell us that section 127.005 was enacted to prevent oil and gas operators, who were dominant over drilling contractors, from imposing oppressive indemnity obligations on contractors, like Greene's and like Grey Wolf. Tex. Civ. Prac. & Rem.Code Ann. § 127.005(b) (Vernon 1997).[1] This was accomplished by requiring "agreement" that equal amounts of insurance support their mutual indemnity obligations. *Id.* Although the operator in *Greene's* did not "agree" in the contract to provide insurance equal to the $6 million that Greene's provided, the operator (Flournoy) actually provided much more than that—$10 million. Instead of aiding Greene's, a contractor whom the statute was intended to assist, that fact helped to deprive Greene's of any indemnity at all. *Greene's*, 113 F.3d at 52 n. 6. Of course, because that indemnity was void, Greene's was also relieved of any potential indemnity to Flournoy. Thus, the parties in *Greene's* purchased $16 million of insurance to support their void indemnities. Only their insurance companies benefitted from that. That could not have been the legislature's intention in enacting § 127.005(b) or the parties' intention in making their contract or buying their insurance.

Similarly, in this case, Weber purchased insurance equal to Grey Wolf's, $16 million, even though it never "agreed" in the contract to do so. Thus, the two operators, Flournoy and Weber, both did what the statute was intended to accomplish. Both operators bought insurance equal to or greater than their contractors to indemnify their contractors from suits by the operators' employees. It is difficult to justify voiding these indemnities when operators have furnished the insurance required or, as in *Greene's*, they have furnished even more. These operators accomplished the purpose of the statute. Their contractors received indemnities equal to or greater than those they gave their operators.

I must concede, however, that the holding in *Greene's* seems true to the words of the statute. Perhaps the legislature feared that if operators were not required—by their contract—to buy equal amounts of insurance, they would not do so, and that would either leave contractors without the intended protection[2] or would generate disputes over what insurance was "available" to a particular operator at a particular time for a particular risk.[3] Although the results in *Greene's* and in this case seem contrary to the statute's intent, I do not feel free to rewrite either the statute or this contract when I can see at least the possibility of some larger goal the industry and the legislature may have been pursuing. Fortunately, the International Association of Drilling Contractors has rewritten its form contract to avoid disputes like this by providing simply that the "operator will ... maintain ... insurance coverage of the same kind and in the same amount as is required of the contractor...." *Greene's*, 113 F.3d at 51 n. 4.

---

1. They have furnished legislative history supporting this view.

2. Requiring equal insurance coverage from operators could also have influenced downward the total amount of indemnity an operator would seek from a contractor. The more indemnity the contractor provided, the more insurance the operator would have to purchase to support his reciprocal indemnity required by section 127.005.

3. It probably never occurred to legislators that, as in *Greene's*, an operator would purchase $10 million of insurance to support its indemnity obligation to its contractor, when the statute required it to buy only $6 million to equal the amount the contractor had purchased.