**KEN PETROLEUM CORP.,
et al., Appellants,**

v.

**QUESTOR DRILLING CORP. and
Phibro Energy U.S.A., Inc.,
Appellees.**

No. 13–97–014–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 6, 1998.

Christopher L. Evans, Lauren L. Simpson, Meyer, Orlando & Evans, P.C., Houston, for appellant.

Michael Lamar Brem, Macey Reasoner Stokes, Jeffrey V. Brown, Baker & Botts, Houston, for appellee.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

Appellants Ken Petroleum Corporation (KEN) and Certain Member Companies at the Institute of London Underwriters (Underwriters), brought suit against Questor Drilling Corporation (Questor) and its parent company, Phibro Energy USA, Inc. (Phibro), for breach of the defense and indemnity provisions in a drilling contract. The trial court granted summary judgment in favor of Questor without stating the grounds for its decision. Appellants bring five points of error contending the trial court erred in granting summary judgment because: (1) the drilling contract was valid and legally enforceable under the Texas Anti–Indemnity Act (TAIA);

(2) KEN had a valid claim under the Deceptive Trade Practices–Consumer Protection Act (DTPA); (3) Underwriters, as KEN's insurers, did not waive their subrogation rights; (4) Questor was not entitled to an offset for payments made by Underwriters; and (5) Phibro breached a guaranty agreement. We affirm in part and reverse in part, remanding the case to the trial court for further proceedings.

## Factual Background

In October 1992, KEN, an operator of oil and gas leases, entered into a written contract with Questor, a contractor, for the drilling of the Duson #1 well in Wharton County, Texas. The parties executed their agreement using a form contract supplied by the International Association of Drilling Contractors (IADC) which contained the following indemnity provision:

14.8 Contractor's Indemnification of Operator: Contractor [Questor] agrees to protect, defend, indemnify, and save Operator [KEN], its officers, directors, employees and joint Owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees, on account of bodily injury, death, or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

The contract contained a mutual and reciprocal provision in paragraph 14.9 by which KEN as operator agreed to indemnify Questor. Under both provisions, each party agreed to support their respective indemnity obligations "either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole...."

Paragraph 13 obligated Questor to maintain insurance coverages as set forth in Exhibit A of the contract. Exhibit A made reference to Questor's certificate of insurance identifying Questor as having one million dollars of available liability insurance in excess of two million dollars of self-insurance for a total of three million dollars. It is undisputed that KEN had Questor's certificate of insurance on file and that it was incorporated by reference into the contract. This paragraph made no reference to KEN's insurance, but it is undisputed that KEN had six million dollars of liability insurance at the time the contract was executed. However, KEN never provided Questor a copy of its insurance certificate nor did Questor ever request one.

On November 5, 1992, Karl Hemphill, an employee of Questor, was killed while working on the Duson # 1 well. Hemphill's estate and survivors sued Questor, KEN and others for wrongful death (the *"Hemphill action"*). KEN filed a cross-claim for indemnity against Questor in this underlying suit, but subsequently nonsuited Questor after Hemphill's estate and survivors settled with all defendants. For KEN's portion, its insurer, Underwriters, contributed $495,000 and KEN contributed its $5000 deductible, for a total settlement of $500,000.

KEN and Underwriters then brought this suit against appellees for breach of the parties' defense and indemnity agreement, DTPA violations, and breach of guaranty. Appellees filed a motion for summary judgment on the grounds that the contract was void under the TAIA, KEN's insurers had waived their subrogation rights pursuant to the contract, and KEN's DTPA claims were invalid. The trial court granted Questor's summary judgment and this appeal arose.

## Standard of Review

The standard of review in a summary judgment case is well-established:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997) (citing *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985)). A trial court should grant a defendant's motion for summary judgment when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997); *Dickson v. State Farm Lloyds,* 944 S.W.2d 666, 667 (Tex.App.—Corpus Christi 1997, no writ). If the order granting a summary judgment does not specify the ground or grounds on which the trial court relied, the nonmoving party on appeal must negate any grounds on which the trial court could have granted the order. *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Reese v. Beaumont Bank, N.A.,* 790 S.W.2d 801, 804 (Tex.App.—Beaumont 1990, no writ).

## Texas Anti–Indemnity Act

By their first point of error, appellants contend the trial court erred by granting appellees' motion for summary judgment because the drilling contract's indemnity agreement was valid and enforceable under the Texas Anti–Indemnity Act (TAIA). Tex. Civ. Prac. & Rem.Code Ann. §§ 127.001–127.008 (Vernon 1997).

■ The TAIA is based on the notion that an inequity is fostered on certain contractors by the indemnity provisions in certain agreements pertaining to wells for oil, gas, or

water, or to mines for other minerals. *Id.* at § 127.002(1). Generally, indemnity provisions such as those contained in this contract are void and unenforceable if they purport to indemnify against liability that arises from personal injury or death. *Id.* at § 127.003(a)(2)(A). However, an exception to this prohibition exists if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to specific limitations. The statutory exceptions controlling this issue state:

> (a) This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or (c).
> (b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance *each party as indemnitor has agreed to provide in equal amounts* to the other party as indemnitee.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 127.005(a), (b) (Vernon 1997) (emphasis added).

Appellants argue that the indemnity agreement is valid because paragraphs 14.8 and 14.9 of the contract satisfy subsection 127.005(a) requiring an indemnity obligation to be supported by liability insurance as evidenced by a writing. Further, appellants claim that 127.005(a) represents the sole statutory requirement for the validity of an indemnity agreement while 127.005(b) serves only to limit the dollar amount of liability under a mutual indemnity agreement. We disagree.

■ The resolution of an issue of statutory construction must begin with an analysis of the statute. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex.1983). If the disputed statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate and the statute should be given its common everyday meaning. *Id.* Subsection 127.005(b) addresses mutual indemnity obligations such as the ones used in this drilling contract. While subsection 127.005(b) does act as a limit on the extent of the parties' indemnity obligations as appellants contend, it also contains a condition for validity requiring the parties to agree on equal amounts of liability insurance coverage that will be used to indemnify the other.

■ In this case, paragraph 13 of the drilling contract incorporated by reference the insurance certificate of Questor, and not KEN. Thus, it cannot be said that each party as indemnitor agreed to provide an equal amount of insurance to the other party as indemnitee, as required by subsection 127.005(b). We agree with appellants that section 127.005 does not contain a requirement that the dollar amount of insurance be stated in writing within the contract at issue. Nevertheless, appellants wholly fail to give any effect to the language in subsection 127.005(b). Clearly, some form of agreement is required prior to or contemporaneous with the execution of the contract whether it be contained in the contract itself or in a separate agreement that is referenced by the contract.

The record indicates that in July 1992, before the parties began negotiating the drilling contract or discussed the possibility of Questor working on the Duson # 1 well, Ken English, President of KEN, had asked Douglas Pillow, Vice–President of Questor, how much insurance Questor had. Pillow stated that he thought Questor had one million dollars of insurance, and he agreed to have a written confirmation of Questor's insurance sent to KEN. English told Pillow that KEN also had at least one million dollars of insurance. Shortly after the above conversation, in response to KEN's request, appellee Phibro sent KEN a letter and a certificate of insurance. The letter and insurance certificate confirmed that Phibro maintained a self-insured retention of two million dollars covering Questor, and that Questor had one million dollars of primary coverage above the self insurance.

However, even if the conversation between Pillow and English in July 1992 could be considered an agreement in compliance with subsection 127.005(b), it is evident from En-

glish's deposition testimony that it was not related to the drilling contract for the Duson # 1 well. Furthermore, there was never an agreement as to the exact amounts of insurance that each party had. At most, the conversation only established that each had a minimum of one million dollars of coverage. Under appellants' interpretation of the statute, both parties would be allowed to satisfy section 127.005 without ever reaching an agreement as to the equal amounts of insurance the other party has provided. The resulting harm is obvious if one party decides to provide a nominal amount of coverage to support its obligation while the other party provides for a more substantial amount.

■ Compliance with subsection 127.005(b) is a validity requirement. Therefore, we also dismiss appellants' argument that the limit of the parties' indemnity liability is the lowest dollar amount of insurance mutually supplied in equal amounts. We understand this contention to mean that if KEN provided six million dollars in coverage and Questor supplied three million, the equal amount of coverage that is agreed to automatically becomes the lesser amount.

In support of their argument, appellants cite to *Dupre v. Penrod Drilling Corp.*, 788 F.Supp. 901 (E.D.La.1992), *aff'd,* 993 F.2d 474 (5th Cir.1993), *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115 (5th Cir. 1992), and *Maxus Exploration Co. v. Moran Bros., Inc.*, 773 S.W.2d 358 (Tex.App.—Dallas 1989), *aff'd on other grounds,* 817 S.W.2d 50 (Tex.1991). In *Dupre,* however, the court did not question the absence of a subsection 127.005(b) agreement. Similarly, *Maxus* and *Campbell* are not applicable because these cases interpreted section 127.005 prior to the

1989 amendments to the statute.[1] Before 1989, section 127.005 limited the indemnity obligation to the extent of the coverage and dollar limits of insurance the indemnitor had agreed to furnish. *Maxus* and *Campbell* held that when an indemnitor voluntarily bought more insurance than was required by statute to support its indemnity obligation, the indemnitee was entitled to the full amount of coverage purchased. *Campbell,* 979 F.2d at 1127; *Maxus,* 773 S.W.2d at 361. Not only would appellants' interpretation unilaterally force one of the parties into providing less coverage than it intended to, contracting parties would be unable to ascertain the amounts of coverage they would be liable for until an actual indemnity obligation was triggered.

■ Appellants refer to paragraphs 14.8 and 14.9 of the contract which provide that each party agrees to support their indemnity obligation "by available liability insurance." Appellants attempt to equate the word "available" with "equal amounts." In *Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co.*, 113 F.3d 47 (5th Cir. 1997), the court was faced with a similar provision in an outdated IADC form contract.[2] The court distinguished the significance between these two terms and held that the phrase "available liability insurance" no longer satisfied the requirements of the TAIA after the 1989 amendments. *Id.* at 51–52. We adopt the rationale in *Greene's* and determine that the contract fails to track the current requirements of 127.005(b).

The last sentence of paragraphs 14.8 and 14.9 provides the contract will automatically be amended, "If it is judicially determined that the monetary limits of insurance re-

1. Prior to 1989, TAIA Section 127.005 read as follows:
(a) The chapter does not apply to an agreement that provides for indemnity with respect to claims for personal injury or death to the indemnitor's employees or agents or to the employees or agents of the indemnitor's subcontractors if the parties agree in writing that the indemnity obligation will be supported by available liability insurance coverage to be furnished by the indemnitor.
(b) The indemnity obligation is limited to the extent of the coverage and dollar limits of insurance the indemnitor has agreed to furnish.

(c) The amount of insurance required may not exceed 12 times the state's basic limits for personal injury, as approved by the State Board of Insurance in accordance with Article 5.15, Insurance Code.
See Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3319 (amended 1989) (current version at TEX. CIV. PRAC. & REM.CODE ANN. § 127.005 (Vernon 1997)).

2. The International Association of Drilling Contractors (IADC) form contract used in this case had a revision date of February 1986.

quired hereunder ... exceed the maximum limits permitted under applicable law." Appellants contend that under this provision, this Court "should read the Contract as if an amendment had been made to the effect that the amount of insurance [KEN] agreed to provide was 'equal' to the $3 million provided by Questor." We find this argument unpersuasive because current subsection 127.005(b) does not set a maximum limit. The only limitation in coverage amounts is the amount each party as indemnitor has agreed to provide in equal amounts.

Recently, another appellate court invalidated the indemnity provisions in an IADC contract for failure to comply with 127.005(b). *Weber Energy Corp. v. Grey Wolf Drilling Co.*, 976 S.W.2d 766 (Tex.App.—Houston [1st Dist.] 1998, no pet. h.), is remarkably similar to this case, whereby Weber and Grey Wolf executed a drilling contract using an IADC form contract. The contract contained mutual indemnity provisions identical to paragraphs 14.8 and 14.9. *Id.* at 767. After Weber was sued by a Grey Wolf employee for personal injuries he received, Grey Wolf refused to indemnify. The trial court granted summary judgment that Weber take nothing. Affirming the lower court, the court of appeals adopted the position of the Fifth Circuit in *Greene's* and held the indemnity provisions to be void under subsection 127.005(b) because the contract obligated Grey Wolf to purchase $16 million of insurance to support its indemnity obligation, but it did not obligate Weber to do the same. *Id.* at 768.

Appellants' final argument under point of error one suggests that this Court should read the Contract as providing a unilateral indemnity agreement. The Texas statute defines a unilateral indemnity obligation as:

an indemnity obligation in an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral in which one of the parties as indemnitor agrees to indemnify the other party as indemnitee with respect to claims for personal injury or death to the indemnitor's employees or agents or to the employees or agents of the indemnitor's contractors but in which the indemni-

tee does not make a reciprocal indemnity to the indemnitor.

TEX. CIV. PRAC. & REM.CODE ANN. § 127.001(6) (Vernon 1997). Clearly, paragraphs 14.8 and 14.9 create mutual, reciprocal indemnity obligations.

Accordingly, we hold the indemnity provisions void. Appellants' first point of error is overruled.

## DTPA

In appellants' second point of error, they contend the trial court erred in granting Questor's motion for summary judgment against their claims under the Deceptive Trade Practices–Consumer Protection Act (DTPA). TEX. BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon 1987 & Supp.1998).

■■■ Questor's motion for summary judgment cited *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex.1996), for the proposition that KEN could not reform an ordinary breach of contract claim into a DTPA cause of action. Generally, a simple breach of contract, without more, does not constitute a "false, misleading or deceptive act" in violation of the DTPA. *Crawford*, 917 S.W.2d at 14 (citing *Ashford Dev., Inc. v. USLife Real Estate Serv.*, 661 S.W.2d 933, 935 (Tex.1983)). However, *Crawford* is distinguishable in that the contract in the case was a legal contract with enforceable provisions. In comparison, performance under the contract in this case could not be compelled when the agreement was void because of an illegality. Thus, we hold there was not a breach of contract as the indemnity agreements in the contract were void as a matter of law, and as a result, appellants' DTPA claims remain viable

■■■ Additionally, appellants claim the DTPA does not require a showing of appellees' wrongful intent as appellees have alleged. Intent to misrepresent, or knowledge that a misrepresentation is untrue, has never been an element of a DTPA "laundry list" claim unless the specific provision requires intent. *Smith v. Herco*, 900 S.W.2d 852, 859 (Tex.App.—Corpus Christi 1995, writ denied) (citing *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980)). Under subsection 17.46(b)(12), one of the DTPA violations that

KEN has brought against Questor, there is no requirement that intent to deceive be proven.[3] *See Wagner v. Morris*, 658 S.W.2d 230, 233 (Tex.App.—Houston [1st Dist.] 1983, no writ) (a misrepresentation as to the rights, remedies, or obligations conferred by a contract is actionable under the deceptive trade practices act, even where there is no proof of intent to decieve.).

Because we find no breach of contract, the trial court's grant of a motion for summary judgment against appellants' DTPA claims was improper. Appellants' second point of error is sustained.

### Subrogation

■■ By their third point of error, appellants complain the summary judgment was granted in error on Underwriters' subrogated claims against Questor because, as a matter of law, KEN did not waive Underwriters' subrogation rights.

■■ The waiver of subrogation clauses applicable to this issue are identified in paragraphs 13 and 14.9 of the Contract. Having determined that the indemnity agreements in paragraphs 14.8 and 14.9 are void, we need not address the waiver of subrogation language in those paragraphs. The pertinent provision of paragraph 13 reads:

13. Insurance: ... For liabilities assumed hereunder by contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes.

Additionally, KEN's insurance policy, which is not part of the drilling contract, contains the following endorsement:

### WAIVER OF SUBROGATION WHEN REQUIRED BY CONTRACT

It is agreed that, with respect to such insurance as is afforded by this Cover

Note, the company waives any right of subrogation against the "principal" named below by reason of any payment made on account of injury, including death resulting therefrom....

"Principal" means any party to whom the named assured is contractually obligated to waive its legal rights of indemnification.

Likewise, the policy's "Conditions" section provides the following, under the heading "SUBROGATION":

The company hereby agrees to waive such rights of recovery against any principal provided such waiver has been included in a written contract executed by the named assured and the claim for damages arises out of specific operations performed for such principal by or on behalf of the named assured.

Subrogation rights may be waived or altered by contract. *Lancer Corp. v. Murillo*, 909 S.W.2d 122, 127 (Tex.App.—San Antonio 1995, no writ); *National Union Fire Ins. Co. v. Pennzoil Co.*, 866 S.W.2d 248, 251–252 (Tex.App.—Corpus Christi 1993, no writ); *see Crow–Williams v. Federal Pacific Elec. Co.*, 683 S.W.2d 523, 525 (Tex.App.—Dallas 1984, no writ) (materialman was a subcontractor for purposes of builder's risk policy provision waiving subrogation rights against general contractor, subcontractor, and sub-subcontractor). Nevertheless, the waiver is not binding upon Underwriters if they had no knowledge of the waiver under the drilling contract. *Seamless Floors by Ford, Inc. v. Value Line Homes, Inc.*, 438 S.W.2d 598, 601–02 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.). But in this case, KEN's policy provides that Underwriters expressly allowed for such waiver. Appellants' argument that Underwriter's waiver of subrogation was limited only to those situations in which KEN was required to indemnify Questor is without merit.

---

**3.** Section 17.46(b)(12) reads:

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:
(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

We find the contractual and policy provisions supportive of the fact that Underwriters waived their subrogation rights in favor of Questor. Appellants' third point of error is overruled.

Appellants' fourth point of error contends the trial court erred in granting summary judgment against Underwriters on the theory that appellees are entitled to an offset for payments made by Underwriters in settlement of the *Hemphill* action. We have held that the indemnity provisions in the drilling contract are void, KEN has a viable DTPA claim, and Underwriters' subrogation rights have been waived. The question of whether or not Questor is liable under KEN's DTPA claims is an issue that will be remanded to the trial court. Thus, we need not analyze the collateral source rule in Texas or the damages that Questor may be liable for, if any.

Appellants' fifth point of error argues that summary judgment was granted in error as to appellants' claims against appellee Phibro Energy USA, Inc. for breach of its guaranty agreement with regard to its subsidiary company, Questor. However, without a finding that Questor has incurred liability, we need not address this question.

Appellants' fourth and fifth points of error are overruled.

Accordingly, we AFFIRM the summary judgment granted in favor of Questor with the exception of KEN's DTPA claims. With regard to the DTPA claims, we REVERSE and REMAND this case to the trial court for further proceedings consistent with this opinion.