**RANGER INSURANCE COMPANY and Swift Energy Company, Appellants,**

v.

**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, Flournoy Production Company, and Flournoy Drilling Company, Appellees.**

No. 01–00–00586–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 23, 2002.

Joseph Edward Byrne, Louis S. Hakim, Berry, Byrne & Randall, Dallas, for Appellants.

Kevin D. Cullen, Cullen, Carsner, Seerden & Cullen, LLP, Victoria, James D. Wise, Jr., Brown, Sims, Wise & White, Mark Christopher Clemer, Brown, Sims, P.C., Houston, for Appellees.

Panel consists of Justices MIRABAL, HEDGES, and JENNINGS.

## OPINION

ADELE HEDGES, Justice.

This case involves indemnity and insurance claims arising out of oilfield litigation. Plaintiffs/appellants, Ranger Insurance Company ("Ranger") and Swift Energy Company ("Swift"), filed a declaratory judgment action to recover money paid in settlement for personal injury claims. The trial court rendered summary judgment for defendants/appellees, American International Specialty Lines Insurance Company ("AISLIC"), Flournoy Production Company, and Flournoy Drilling Company ("Flournoy"). We reverse and remand.

## Background

Plaintiffs/appellants are Swift, the well operator of an oil and gas property, and its insurer, Ranger. Defendants/appellees are Flournoy, the drilling contractor, and its insurer, AISLIC. Swift and Flournoy entered into an oil and gas well drilling contract dated March 21, 1996. The contract contained mutual indemnity provisions to protect each against suits by the other's employees. Flournoy (the contractor) agreed to indemnify Swift (the operator) for claims by Flournoy's employees. In turn, Swift agreed to indemnify Flournoy for claims by Swift's employees.

On June 23, 1996, a blowout occurred at the well site. Two Flournoy employees, Craig Claus and Tommy Rackowitz, were injured. They were barred from suing Flournoy, their employer, because of workers' compensation; therefore, they sued only Swift. On December 3, 1997, Swift and its insurance carriers paid $2.7 million to settle the Claus litigation. Shortly thereafter, Swift and its insurance carriers paid $2.3 million to settle the Rackowitz litigation.

Swift and Ranger (as Swift's subrogee) filed a declaratory judgment action against Flournoy and its carriers to recover the reasonable and necessary costs of defense and indemnity associated with the Claus and Rackowitz litigation. The trial court rendered summary judgment for appellees, Flournoy and AISLIC, holding that the indemnity provisions were void under the Texas Oilfield Anti Indemnity Act. Swift and Ranger appeal.

## Standard of Review

To prevail on a motion for summary judgment, a defendant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *See Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999). A defendant

who moves for summary judgment on the basis of an affirmative defense has the burden to prove conclusively all the elements of the affirmative defense as a matter of law. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In conducting our review of the summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *Id.*

### Texas Oilfield Anti–Indemnity Act

This case requires an interpretation of the 1995 version of the Texas Oilfield Anti–Indemnity Act (the 1995 Act).[1] Under the 1995 Act, certain agreements between operators and drillers providing for indemnification of a negligent indemnitee are against public policy. 1995 Act § 127.002(b). The legislative history indicates that in 1973, drilling and other contractors had agreed to indemnify operators, but were unable to obtain insurance at a reasonable cost, or in some cases to obtain any insurance at all to cover liability that might be incurred from the indemnity obligations. *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 348 (Tex.2000). Contractors were thus subjected to significant liability with no feasi-

ble means of insuring against those obligations. *Id.*

The 1995 Act voids indemnity provisions that purport to indemnify a party against liability caused by the indemnitee's sole or concurrent negligence and arising from personal injury, death, or property damage. 1995 Act § 127.003. The Legislature carved out the "mutual indemnity obligation" exception to the general rule:

> With regard to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

1995 Act § 127.005(b).[2] Accordingly, a mutual indemnity obligation must be "limited to the *extent of coverage* and *dollar limits* of insurance" that each party "has agreed to provide in equal amounts" to the other party. *Id.* (emphasis added).

In *Ken Petroleum Corp. v. Questor Drilling Corp.*, the Texas Supreme Court interpreted the 1991 version of the Act[3] with regard to "dollar limits" of insurance. 24 S.W.3d at 348–51. Two courts of appeals had held that indemnity provisions were void under the Act because the parties did not agree to procure the same dollar amount of insurance to support their

---

1. Unless otherwise indicated, this opinion will refer to the Act as it existed in 1995. Act of May 27, 1995, 74th Leg., R.S., ch. 679, § 1, 1995 Tex. Gen. Laws 3655, *amended by* Act of May 26, 1999, 76th Leg., R.S., ch. 1006, § 1, 1999 Tex. Gen. Laws 3791 [hereinafter 1995 Act].

2. We do not consider the 1999 amendments to the 1995 Act because they took effect after the personal injuries in this case occurred. The 1999 amendment to section 127.005(b) replaced the phrase "provide in equal amounts" with "obtain for the benefit of."
   > With regard to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar

limits of insurance or qualified self-insurance each party as indemnitor has agreed to << + obtain for the benefit of + >> <<-provide in equal amounts->> to the other party as indemnitee.
Act of May 27, 1995, 74th Leg., R.S., ch. 679, § 1, 1995 Tex. Gen. Laws 3655, *amended by* Act of May 26, 1999, 76th Leg., R.S., ch. 1006, § 1, 1999 Tex. Gen. Laws 3791 (current version at Tex. Civ. Prac. & Rem.Code § 127.005).

3. *See* Act of April 9, 1991, 72nd Leg., R.S., ch. 36, § 3, 1991 Tex. Gen. Laws 430–31 (amended 1995, 1999) (current version at Tex. Civ. Prac. & Rem.Code § 127.005).

respective indemnity obligations. *See Ken Petroleum Corp. v. Questor Drilling Corp.,* 976 S.W.2d 283, 289 (Tex.App.-Corpus Christi 1998), *rev'd,* 24 S.W.3d 344 (Tex. 2000); *Weber Energy Corp. v. Grey Wolf Drilling Co.,* 976 S.W.2d 766, 769 (Tex. App.-Houston [1st Dist.] 1998) *rev'd,* 24 S.W.3d 344 (Tex.2000).

The Texas Supreme Court reversed, holding that: (1) mutual indemnity obligations can be valid under the 1991 Act, even if the parties agree to provide liability insurance in differing amounts; (2) the indemnity obligations are enforceable to the coverage and dollar limits that apply equally to both parties; and (3) the indemnity agreement need not specify the amount of liability insurance. *Ken Petroleum,* 24 S.W.3d at 351. The supreme court held that the indemnity obligation is limited to the amount of insurance that is equally provided:

> The meaning of section 127.005(b) is not as clear as it might have been. But we conclude that it does not require parties to a mutual indemnity agreement to agree to have insurance in the same dollar amount. Instead, it contemplates that the mutual indemnity obligations will be enforceable only up to "the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee." TEX. CIV. PRAC. & REM.CODE § 127.005(b). In other words, "the indemnity obligation is limited" to the amount of insurance that is equally provided. If one party provides more insurance than the other, the party providing the higher amount of coverage may not enforce its right to indemnity beyond the amount of coverage that the other party agreed to provide. And the party providing the lower amount of insurance may not enforce its right to indemnity beyond its own amount of coverage.

*Id.* at 350.

## Dollar Limits

█ In issue one, appellants contend that the trial court erred in holding that the indemnity agreement was unenforceable, invalid, or void.

Under the 1995 Act, a mutual indemnity obligation must be "limited" to the extent of coverage and dollar limits of insurance that each party has agreed to provide in equal amounts to the other party. 1995 Act § 127.005(b). Appellees contend that the indemnity obligation was not limited to the extent of available insurance because paragraphs 18.10 and 18.11 of the contract specified that the obligation was "*without limit* and *without regard* to the cause or causes thereof or the negligence of any party or parties." Appellees argue that this provision invalidates the contract. We disagree.

Appellees' motion for summary judgment relied on the two underlying courts of appeals opinions in *Ken Petroleum* and *Weber Energy. See Ken Petroleum,* 976 S.W.2d at 283; *Weber,* 976 S.W.2d at 766. After the trial court granted appellees' motion for summary judgment in this case, the Texas Supreme Court reversed *Ken Petroleum* and *Weber Energy*—the two courts of appeals opinions upon which appellees relied. *Ken Petroleum,* 24 S.W.3d at 346. In *Ken Petroleum,* the supreme court upheld contracts containing similar "without limit" and "without regard" provisions. *Id.* at 357 n. 16. Likewise, those provisions do not invalidate the contract here. In accordance with the supreme court's opinion in *Ken Petroleum,* the contract in this case is enforceable up to the dollar limits that apply equally to both parties.

We sustain issue one.

## Extent of Coverage

■ In issue two, appellants contend that the trial court erred in holding that the indemnity provisions of the contract are neither "unilateral" nor "mutual" under the Act.

"Mutual" and "unilateral" indemnity obligations, which are defined in the 1995 Act, are statutory exceptions to the general rule invalidating oilfield indemnity agreements. 1995 Act § 127.005(b), (c). Appellees argue that the contract was neither mutual nor unilateral because Swift did not indemnify Flournoy for Flournoy's gross negligence, whereas Flournoy indemnified Swift for Swift's gross negligence. The third paragraph of Exhibit "D" to the contract, entitled Footage Drilling Contract, states, "In no event shall the assumption of liability by Operator [Swift] in Articles 12.2, 12.3 and 18 above be construed to include the damage or loss resulting from gross negligence of Contractor [Flournoy]." There is no provision stating that Flournoy is not responsible for any damage or loss resulting from Swift's gross negligence; therefore, Flournoy argues that the obligations are not reciprocal.

Under section 127.005(b), a mutual indemnity obligation must be "limited to the *extent of coverage* and *dollar limits* of insurance" that each party "has agreed to provide in equal amounts" to the other party. 1995 Act § 127.005(b) (emphasis added). In *Ken Petroleum*, the supreme court interpreted the 1991 Act with regard to "dollar limits" of insurance. *Ken Petroleum*, 24 S.W.3d at 348–51. The supreme court held that mutual indemnity obli-

gations can be valid under the 1991 Act, even if the parties agree to provide liability insurance in differing amounts:

If one party provides more insurance than the other, the party providing the higher amount of coverage may not enforce its right to indemnity beyond the amount of coverage that the other party agreed to provide. And the party providing the lower amount of insurance may not enforce its right to indemnity beyond its own amount of coverage.

*Id.* at 350. Similarly, in issue one above, we held that the contract is enforceable to the dollar limits that apply equally to both parties.

Although the issue in *Ken Petroleum* was exclusively about dollar limits, the supreme court held that "mutual indemnity obligations will be enforceable only up to the *extent of the coverage and dollar limits* ... each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee." *Id.* (emphasis added). Therefore, we hold that mutual indemnity obligations are enforceable, but only up to the *extent of coverage* the parties agreed to provide in equal amounts. In other words, the indemnity obligation is limited to the lowest common denominator of coverage.

Moreover, paragraph 9.5[4] of the contract in this case contained the following savings clause:

In the event any provision of this Contract is inconsistent with or contrary to any applicable federal, state or local law, rule or regulation, said provision shall be deemed to be modified to the extent required to comply with said law, rule,

---

4. Paragraph 18.10 contained a second savings clause, which stated as follows:

If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily assumed ... exceed the maximum limits permitted

under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

or regulation and as so modified said provision and this Contract shall continue in full force and effect.

Rather than declare the entire contract unenforceable, the savings clause states that any improper provision should be modified. We hold that mutual indemnity obligations are enforceable, but only up to the extent of coverage the parties agreed to provide in equal amounts.

We sustain issue two.

### "Equal" vs. "Available"

■ Appellees argue that the indemnity obligation is void because paragraphs 18.10 and 18.11 of the contract require that the indemnity obligation be supported by "available liability insurance."

Under the Act as originally promulgated, each party was required to agree in writing to support the indemnity obligation with "available" liability insurance.[5] In 1989, however, the legislature amended section 127.005 to require "equal amounts" of liability insurance.[6]

*Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co.*, 113 F.3d 47 (5th Cir.1997), explains the significant difference between the terms "equal" and "available." The contract in *Greene's*, which was an outdated form contract designed to satisfy the requirements of the pre–1989 Act, specified that the indemnity agreement was supported by "available" liability insurance—language which was amended by the Texas legislature in 1989. *Id.* at 51. Therefore, the *Greene's* contract did not satisfy the Act at that time, which required that the parties provide "equal"

amounts of liability insurance. *Id.* at 51–52.

In their motion for summary judgment, appellees relied on *Greene's*, arguing that the provision requiring the indemnity obligation to be supported by "available liability insurance" did not meet the requirements of the Act's mutual indemnity obligation exception. The *Greene's* contract is distinguishable, however, because it was an outdated form designed to satisfy the requirements of the pre–1989 Act. *Id.* at 51. In contrast, the contract in this case was a June 1994 International Association of Drilling Contractors form contract, which stated, "Operator will, as well, ... and shall maintain ... insurance coverage of the same kind and *in the same amount* as is required of the Contractor." (emphasis added).

We conclude that this provision, which was absent from the contract in *Greene's*, satisfies the requirement to provide equal amounts of insurance under section 127.005 of the 1995 Act.

### Conspicuous

■ In issue four, appellants contend that the trial court erred in failing to find that the indemnity provisions of the contract are conspicuous within the meaning of the Uniform Commercial Code (UCC) and the Texas Supreme Court's opinion in *Dresser Industries, Inc. v. Page Petroleum*, 853 S.W.2d 505 (Tex.1993).

In *Dresser*, the supreme court held that the fair notice requirements of conspicuousness apply to indemnity agreements. *Id.* at 509. The conspicuousness issue is a question of law for the court. *Id.* The

---

5. *See* Act of May 19, 1973, R.S., 63rd Leg., ch. 646 § 4(c), 1973 Tex. Gen. Laws 1767–68 (amended 1985, 1989, 1991, 1995, 1999) (current version at TEX. CIV. PRAC. & REM.CODE § 127.005).

6. *See* Act of May 27, 1989, 71st Leg., R.S., ch. 1102, § 3, 1989 Tex. Gen. Laws 4557–58 (amended 1991, 1995, 1999) (current version at TEX. CIV. PRAC. & REM.CODE § 127.005).

*Dresser* court adopted the UCC conspicuousness standard for indemnity agreements:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON–NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous".

*Id.* at 510–11 (citing TEX. BUS. & COM.CODE ANN. § 1.201(10) (Vernon Supp.2002)).

The *Dresser* release provisions were located on the back of a work order in a series of numbered paragraphs without headings or contrasting type. *Dresser,* 853 S.W.2d at 510–11. The contract had eighteen uniformly printed and spaced paragraphs printed on the reverse side of the contract with a provision incorporating all eighteen paragraphs on the front side of the contract. *Id.* at 511 n. 6. The court held that the contractual exculpatory provisions were without effect since they did not comply with the fair notice requirement of conspicuousness. *Id.; see also Enserch Corp. v. Parker,* 794 S.W.2d 2, 9 (Tex.1990) (holding that indemnity language on front of one-page contract was conspicuous).

Appellees argue that the indemnity language in this case is not conspicuous because it is scattered, not on the front of the document, not in contrasting color, not in a different typeface, and among unrelated terms. We disagree. Unlike the *Dresser* provisions which were on the back of a work order, the indemnity language in this contract was on the front of a footage drilling contract. Paragraphs 18.10 and 18.11 are respectively entitled "Contractor's Indemnification of Operator" and "Operator's Indemnification of Contractor." Both paragraphs are contained under the general and more encompassing paragraph 18 heading, which is set off in a slightly larger font and in all bold, capital letters as follows: "**RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK.**" The indemnity agreement is not amongst unrelated terms, but instead is within this general heading containing 15 separate sub-paragraphs dealing with indemnity, responsibility for loss or damage, releases of liability, and allocations of risk. We hold that the indemnity provisions of the contract are conspicuous.

We sustain issue four.

### Remaining Issues

As set forth above, we sustain issues one, two, and four, holding that: (1) the contract is enforceable to the extent of coverage and dollar limits that apply equally to both parties and (2) the indemnity provisions are appropriately conspicuous. We need not reach the merits of appellants' following alternative arguments as to why they are entitled to indemnification: (1) whether the contract's savings clause conforms the terms to an enforceable agreement; (2) whether Swift was an additional insured; (3) if so, whether appellees raised a fact issue on appellants' allegations of waiver, estoppel, and bad faith; (4) whether the trial court should have resolved any contract ambiguity in Swift's favor; and (5) whether the trial court erred in denying appellants leave to amend their pleadings. In light of our disposition reversing and remanding this case, we do not address these remaining issues.

### Conclusion

We hold that the trial court erred in granting appellees' motion for summary

judgment. We reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.