**Reversed and Remanded and Opinion filed May 30, 2024**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00359-CV

### DEACERO, S.A.P.I. DE C.V., Appellant

### V.

### BNSF RAILWAY COMPANY, Appellee

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-05593B**

## O P I N I O N

In this contractual indemnity case, we must decide whether an otherwise conspicuous indemnity provision complies with the fair notice requirements set forth in *Dresser Industries, Inc. v. Page Petroleum* when it is located in a portion of the contract incorporated by reference that was only accessible by a general website. 853 S.W.2d 505, 508 (Tex. 1993). Donald Seeberger, an employee of BNSF Railway Company (BNSF), sued BNSF and Deacero, S.A.P.I. de C.V. (Deacero) for injuries

he sustained when he was struck by a door protruding from a nearby railcar.[1] BNSF brought a cross-claim action against Deacero and its insurer seeking indemnity based on Deacero's failure to load and secure the railcar properly. Deacero and BNSF filed cross-motions for summary judgment on BNSF's indemnity claim. The trial court granted BNSF's motion for summary judgment, denied Deacero's motion, and entered judgment that BNSF was entitled to indemnity from Deacero for damages arising out of Seeberger's claims for BNSF's negligence. In two issues, Deacero contends that the trial court erred in granting BNSF's motion for summary judgment and in denying its motion for partial summary judgment. Because we conclude that the indemnity clause is not conspicuous enough to provide fair notice, we reverse the trial court's order granting BNSF's motion for summary judgment and remand the case to the trial court for further proceedings.

## *Background*

Deacero is a Mexican corporation headquartered in Monterrey, Mexico. Deacero manufactures specialized coil wire and other metal products used in construction, fencing, metal structures, and other commercial metal components. BNSF operates a railway network and regularly contracts with Deacero to transport products to the United States through an agreement called the "Price Authority." The Price Authority provides the rates, routes, and other terms and conditions applicable to customer shipments along certain BNSF routes. The relevant Price Authority, BNSFQ 113507, governed the shipping arrangement from October 1, 2019 to November 30, 2019. The first two pages of the Price Authority contain nine "GENERAL RULES," while the remaining pages identify the freight, base rates, and routes. Under the general rules section, there is a subheading entitled "RL SUB

---

[1] Seeberger is not a party in this appeal and is mentioned only for context.

2

BNSF 6100 RULES BOOK." This provision, located on the right side of the page in the third bullet point from the bottom, states:

> Transportation under this agreement is subject to BNSF Rules Book 6100-Series in effect as of the date of shipment. A copy of this Rules Book may be obtained via the internet at: www.BNSF.com.

The Price Authority also references BNSF Rules Book 6100-Series (6100 Rules Book) on page two under a provision entitled "FUEL+/- FALKCRLD $2.50 MILE." This provision, located on the right side of the page in the first bullet point, provides:

> Price is subject to a Fuel Surcharge. A Mileage Based Fuel Surcharge will be applied to the rates or charges in this price authority for the shipment, as provided for in Item 3376-Series, Section B ($2.50 Strike Price), of BNSF Rules Book 6100-Series. This amount will be added to the freight bill.

The aforementioned provisions are the only reference to the 6100 Rules Book in the Price Authority. And, the term "indemnity"—or any provision regarding an indemnity clause—is wholly absent from the text of the Price Authority. The 6100 Rules Book, which could allegedly be located at BNSF's general website, contains a table of contents consisting of seven sections. Among the seven sections are over 100 rules and regulations that govern various aspects of the transportation and shipping agreement, including "GENERAL RULES AND REGULATIONS," "RULES AND REGULATIONS GOVERNING FROZEN AND NON-FROZEN COMMODITIES REQUIRING MECHANICAL PROTECTIVE SERVICE," and "RULES GOVERNING SWITCHING." The indemnity provision, which is located on page 17 of the 6100 Rules Book under section 2 entitled "Specific Rules and Regulations – Without Charges," states:

**Item 2265 – Liability and Indemnity**
RAILROAD PARTIES SHALL NOT BE LIABLE, AND

CUSTOMER SHALL RELEASE, INDEMNIFY AND HOLD HARMLESS RAILROAD PARTIES, FOR ALL LOSS, DAMAGE, OR INJURY (COLLECTIVELY, INCLUDING WITHOUT LIMITATION ATTORNEY'S FEES AND OTHER COSTS OF LITIGATION, LIABILITY TO THIRD PARTIES, FINES, PENALTIES, ENVIRONMENTAL RESPONSE, INVESTIGATION, AND REMEDIATION COSTS, AND NATURAL RESOURCE DAMAGES) ARISING FROM (A) ANY DEFECTS IN OR FAILURE OF PRIVATE EQUIPMENT; (B) IMPROPER LOADING OR UNLOADING PRACTICES, INCLUDING WITHOUT LIMITATION EXCESS WEIGHT OR FAILURE TO PROPERLY CLOSE, SECURE AND TENDER LOADED OR EMPTY EQUIPMENT; (C) FAILURE BY THE CUSTOMER (OR ITS AGENTS OR CONTRACTORS OR RECEIVERS) TO COMPLY WITH THE REPRESENTATIONS, WARRANTIES AND COVENANTS MADE IN THE PRICE AUTHORITY OR WITH THE RULES APPLICABLE TO CUSTOMER WITH RESPECT TO THE MOVEMENT OF COMMODITIES PURSUANT TO THE PRICE AUTHORITY; (D) THE PRESENCE OF ANY TRACE CHEMICALS OR CONTAMINANTS IN THE COMMODITY WHICH ARE NOT DESCRIBED IN THE COMMODITY'S PROPER U.S. DOT SHIPPING DESCRIPTION, AS PROVIDED IN APPLICABLE U.S. DOT REGULATIONS; OR (E) ANY LOSS, DAMAGE OR INJURY TO THE EXTENT CAUSED BY CUSTOMER (OR ITS AGENTS OR CONTRACTORS OR RECEIVERS). THE LIABILITY ASSUMED BY CUSTOMER SHALL NOT BE AFFECTED BY THE FACT, IF IT IS A FACT, THAT THE LOSS, DAMAGE OR INJURY WAS OCCASIONED BY OR CONTRIBUTED TO BY THE NEGLIGENCE OF THE RAILROAD PARTIES, EXCEPT TO THE EXTENT THAT SUCH CLAIMS ARE PROXIMATELY CAUSED BY THE INTENTIONAL MISCONDUCT OR GROSS NEGLIGENCE OF THE RAILROAD PARTIES. "Railroad parties" as used herein shall refer to BNSF and BNSF affiliated companies, partners, successors, assigns, legal representatives, officers, directors, shareholders, employees, agents and handling carriers.

The 6100 Rules Book also incorporates BNSF Contract Rules Book 90010-Series (90010 Rules Book), another set of rules that contain general terms and provisions for contracts. The provision referencing the 90010 Rules Book is under

section 1 entitled "General Rules and Regulations, Item 1160 – BNSF Published Signatureless Contracts." The 90010 Rules Book indemnity provision is remarkably similar to the provision located in the 6100 Rules Book, except that the entirety of the provision is in bold font. But this provision is located under Item 204 entitled "Equipment." The 90010 Rules Book also contains another indemnity provision in Item 310, entitled "Indemnification by Customer." This provision provides:

**Item 310 – Indemnification by Customer**

In addition to any other provisions regarding indemnification or liability contained in the Contract or elsewhere in this Rules Book, Railroad shall not be liable to Customer, and Customer shall indemnify and hold harmless Railroad, for all costs, damage, injury or other loss (including without limitation attorneys' fees and other costs of litigation and/or settlement and all fines, penalties, damages or other payments made by the Railroad to others) for which Customer is liable pursuant to the terms of the Contract or this Rules Book or which occur due to failure by Customer to comply with the representations, warranties and covenants made in the Contract or this Rules Book or with the Applicable Rules to which Customer is subject with respect to the movement of commodities contemplated by the Contract.

Unlike the other two indemnity provisions, the "Indemnification by Customer" provision is not capitalized or otherwise distinguishable from the surrounding text.

As mentioned, Seeberger is an employee of BNSF. In November 2019, he was working in a Houston-area switching yard when he was struck and injured by a door protruding from a nearby railcar. The railcar with the protruding door was filled with steel manufactured by Deacero. In January 2020, Seeberger sued BNSF for negligence under the Federal Employers' Liability Act (FELA). Seeberger later amended his petition to include claims against Deacero for negligence in loading and failing to secure the railcar. BNSF then filed its cross-claim against Deacero, alleging that the contract between the parties obligated Deacero to indemnify BNSF.

5

In May 2022, Deacero filed its traditional motion for partial summary judgment, arguing that the indemnity provision BNSF relied upon did not satisfy the fair notice requirements, and thus, was unenforceable. In July 2022, BNSF cross-motioned for summary judgment, contending, among other things, that Deacero is obligated to indemnify and defend BNSF pursuant to the express terms of the contract. After a hearing, the trial court granted BNSF's motion, entered judgment that BNSF was entitled to indemnity from Deacero for damages arising from Seeberger's claims based on BNSF's negligence, and denied Deacero's motion. Deacero timely filed its notice of appeal.

### *Standard of Review*

In an appeal from a trial court's rulings on cross-motions for summary judgment, we determine all questions presented and render the judgment that the trial court should have rendered. *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002); *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) ("When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented."). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 259 (Tex. 2018). We review the summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To do so, we take all evidence favorable to the nonmovant as true, indulging every reasonable inference and resolving any doubts in its favor. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a traditional motion for summary judgment, a movant must prove entitlement to judgment as a matter of law on the issues pled and set out in the motion for summary judgment. Tex. R. Civ. P. 166a(c); *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 607 (Tex. 2013). A summary

judgment granted on the basis of an affirmative defense will be affirmed only if the record establishes that the movant conclusively proved all elements of its affirmative defense as a matter of law. *See City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

### *Governing Law*

We construe indemnity agreements under normal rules of contract construction. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). Our primary goal is to ascertain and give effect to the parties' intent as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy*, 207 S.W.3d 342, 345 (Tex. 2006). However, because indemnifying a party for its own negligence is an extraordinary shifting of risk, the supreme court has imposed fair notice requirements to these types of agreements. *See Dresser Indus., Inc.*, 853 S.W.2d at 508. Risk-shifting provisions such as indemnity clauses must satisfy two fair notice requirements: (1) the express negligence test and (2) conspicuousness. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004); *Littlefield v. Schaefer*, 955 S.W.2d 272, 274 (Tex. 1997).

Under the express negligence test, a party contracting for indemnity from the consequences of its own negligence must express that intent in specific terms within the four corners of the contract. *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). The express negligence test was established by the supreme court "to cut through the ambiguity" of indemnity provisions, thereby reducing the need for satellite litigation regarding interpretation of indemnity clauses. *Id.* (quoting *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987)). The express negligence requirement is not an affirmative defense but a rule of contract interpretation and, accordingly, is determinable as a matter of law. *Id.*

Like express negligence, conspicuousness is a question of law. *See Dresser*

7

*Indus., Inc.*, 853 S.W.2d at 509. For a provision to be conspicuous, "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Reyes*, 134 S.W.3d at 192 (quoting *Dresser*, 853 S.W.2d at 508). In evaluating conspicuousness in the fair notice context, the supreme court has adopted the definition from the Uniform Commercial Code (UCC), which provides:

> "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> (A)  a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B)  language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Tex. Bus. Com. Code § 1.201(10).[2] A contract provision which fails to satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law. *See Dresser Indus., Inc.*, 853 S.W.2d at 509–10; *see also U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789, 792 (Tex. App.—Houston [14th Dist.] 1995, writ denied).

---

[2] At the time of *Dresser*, UCC section 1.201(10) defined "conspicuous" as:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous." Whether a term or clause is "conspicuous" or not is for decision by the court.

Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, sec. 1.201(10), 1967 Tex. Gen Laws 2343, 2349 (UCC, Tex. Bus. & Com. Code § 1.201(10), since amended).

However, whether language is conspicuous becomes immaterial if the indemnitee can establish that the indemnitor had actual knowledge of the indemnity clause. *Cate v. Dover Corp.*, 790 S.W.2d 559, 561–62 (Tex. 1990); *Dresser Indus., Inc.*, 853 S.W.2d at 508 n.2. Actual knowledge is treated as an affirmative defense to a claim of lack of fair notice. *Reyes*, 134 S.W.3d 194; *U.S. Rentals, Inc.*, 901 S.W.2d at 793. As the party seeking indemnification, the burden of establishing actual knowledge is on BNSF. *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 791 (Tex. App.—Austin 2002, pet. dism'd). Actual knowledge can result from prior dealings of the parties or if the indemnitee specifically brings the inconspicuous waiver to the indemnitor's attention. *Cate*, 790 S.W.2d at 561. Whether a party had actual notice or knowledge is generally a question of fact. *Goodyear Tire and Rubber Co. v. Jefferson Constr. Co.*, 565 S.W.2d 916, 919 (Tex. 1978). The determination can be made as a matter of law "only when there is no room for reasonable minds to differ." *Id.* at 919–20.

### *Discussion*

As mentioned, Deacero raises two issues on appeal, alleging that the trial court erred in (1) granting summary judgment for BNSF on its contractual indemnity claim and (2) denying Deacero's competing motion for summary judgment. We begin our analysis by addressing whether the indemnity provisions comply with all the requirements of fair notice and are enforceable as a matter of law. In this case, there is no dispute between the parties that the indemnity provision meets the express negligence doctrine requirement. Accordingly, our review is limited to whether the indemnity provisions satisfy the conspicuousness requirement.

### I.    Conspicuousness

In its motion for summary judgment, BNSF states that the 6100 Rules Book is clearly incorporated by reference on the first page of the Price Authority. BNSF

also emphasizes that the 6100 Rules Book is the only document the Price Authority directly references. BNSF argues that documents incorporated into a contract by reference become part of the contract. Put another way, BNSF seems to suggest that the "face" of the contract includes the Price Authority *and* the 6100 Rules Book. We, however, disagree with this contention.

In considering conspicuousness in the fair notice context, Texas courts have generally found it relevant that an indemnity provision is either found or at least mentioned on the first page of the contract and is set apart in some way from other text. *See Dresser Indus., Inc.*, 853 S.W.2d at 508–09 (explaining that the fair notice requirements of conspicuousness and the express negligence doctrine apply to releases as well as to indemnity agreements and concluding that the releases were not conspicuous because the provisions were located on the back of a work order in a series of numbered paragraphs without headings or contrasting type); *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990) (providing that the indemnity language was sufficiently conspicuous to afford fair notice of its existence when the entire contract appeared on one page and the language was on the front side of the contract, not hidden under a separate heading or surrounded by completely unrelated terms); *Goodyear Tire and Rubber Co.*, 565 S.W.2d at 920 (providing that there was some evidence that the indemnity provision was conspicuous because the front of each page of the purchase order contained a statement in large red type referencing the terms and conditions on the back, and the indemnity provisions were contained on the reverse side of the purchase order)[3]; *U.S. Rentals, Inc.* 901 S.W.2d at 792 (concluding that the indemnity provision on the back of the rental contract did not satisfy the conspicuous requirement because the indemnity provision was the seventh of fifteen unrelated provisions and the headings and text of all fifteen

---

[3] Prior to *Dresser*, conspicuousness was treated as a question of fact. 853 S.W.2d at 509.

provisions were printed in the same respective sizes and types); *GE Oil & Gas Pressure Control, L.P. v. Carrizo Oil & Gas, Inc.*, No. 01-21-00285-CV, 2023 WL 3513141, at *24 (Tex. App.—Houston [1st Dist.] May 18, 2023, no pet. h.) (mem. op.) (concluding that the indemnity provision was conspicuous because the field service order included a statement on the top of the front of the page that specifically referred to the terms and conditions printed on the back of the document, and a second statement appeared above the signature line and referred to the terms and conditions, including the indemnity provisions printed on the reverse side); *Am. Home Shield Corp. v. Lahorgue*, 201 S.W.3d 181, 185 (Tex. App.—Dallas 2006, pet. denied) (concluding that indemnity provision was not conspicuous because it appeared "on the back of the contract in a series of numbered, uniformly printed and spaced paragraphs without headings or contrasting type"); *Ranger Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 78 S.W.3d 659, 665 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (providing that the indemnity language was conspicuous because it was on the front of a footage drilling contract, not among unrelated terms, and the paragraph heading was set off in a slightly larger font and in bold, capital letters); *K & S Oil Well Serv. Inc. v. Cabot Corp.*, 491 S.W.2d 733, 737–38 (Tex. App.— Corpus Christi 1973, writ ref'd n.r.e.) (explaining that the indemnity provision was not conspicuous enough to import fair notice because it was hidden on the reverse side of the sales order under a heading entitled "Terms and Conditions" and was surrounded by completely unrelated terms).

At least one Texas court has considered the conspicuousness requirement for an indemnity provision incorporated by reference into the parties' contract. *See ALCOA v. Hydrochem Indus. Servs., Inc.*, No. 13-02-00531-CV, 2005 WL 608232, at *9 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2005, pet. denied) (mem. op.). In *ALCOA*, six additional contract documents were incorporated by reference. *Id.* Of

the six additional documents, five were labeled to indicate their contents, i.e., "AFFIDAVIT, RELEASE AND WAIVER OF LIENS FORM R-379-5," "SAFETY POLICY PROCEDURE #151," "RMCO. FORM R-379-8 POLICY ON SUBSTANCE ABUSE," "RMC SPEC. WS-LQ-192 R/11 'CONTRACTORS' GENERAL WORK CONDITIONS," and "RATE SHEETS." The sixth document containing the indemnity clause was generically labeled "SUPPL. TERMS & CONDITIONS FORM R-380-1." The court concluded that the indemnity provision was not sufficiently conspicuous to satisfy the fair notice requirement, finding that "something indicating the intent to transfer liability must appear on the face of the contract sufficient to attract the attention of a reasonable person." *Id.*

Additionally, at least one Texas court has considered the conspicuousness requirement of an indemnity provision incorporated by a website. *See Matador Prod. Co. v. Weatherford Artificial Lift Sys., Inc.*, 450 S.W.3d 580, 590–94 (Tex. App.—Texarkana 2014, pet. denied). In *Matador Prod. Co.*, the price estimate page of the contract included a paragraph written in tiny print directing the customer to its website containing the terms and conditions. *Id.* at 593. The court concluded that the price estimate page failed to indicate that substantial liability-limiting provisions were contained within the terms and conditions because the paragraph referencing the terms and conditions was written in regular font at the bottom of the last page of the six-page document and did not refer to any liability-limiting provisions. *Id.* at 594.

Reviewing the relevant Price Authority, we conclude that the generic title referring to the 6100 Rules Book does not attract the attention of a reasonable person to afford fair notice of the presence of a risk-shifting indemnity clause contained therein. *See Dresser Indus., Inc.*, 853 S.W.2d at 508; *Matador Prod. Co.*, 450 S.W.3d at 594. As discussed, the general rules are located primarily on the first page

12

of the Price Authority. While the term "GENERAL RULES" is set off in a slightly larger type in all bold capital letters, reference to the 6100 Rules Book appears in the sixth of nine bullet points among unrelated terms and is printed in the same size and type as the surrounding text. *See U.S. Rentals, Inc.* 901 S.W.2d at 792 (concluding that the indemnity provision did not satisfy the conspicuous requirement because it was the seventh of fifteen unrelated provisions and the headings and text of all fifteen provisions were printed in the same sizes and types). The purpose of the conspicuousness requirement is to protect the buyer from surprise and an unknowing waiver of its rights. *Littlefield v. Schaefer*, 955 S.W.2d 272, 275 (Tex. 1997). And, nothing on the face of the Price Authority notifies the customer of the risk-shifting indemnity provisions located on BNSF's general website where the 6100 Rules Book is purportedly located and in the 90010 Rules Book, which is incorporated by the 6100 Rules Book (assuming the customer is able to locate the 6100 Rules Book). *See Matador Prod. Co.*, 450 S.W.3d at 594.

Additionally, we are not persuaded by BNSF's argument that the indemnity language contained in the 6100 Rules Book—and not the print which refers the customer there—is conspicuous. BNSF's position is a classic example of "the tail wagging the dog." It is immaterial if the indemnity provision located in the 6100 Rules Book is conspicuous if nothing on the face of the contract attracts the attention of a reasonable person to afford fair notice of the presence of the risk-shifting indemnity clause at the website. *See ALCOA*, 2005 WL 608232, at *9 ("Whether the heading '**LIABILITY**' is conspicuous enough to attract the attention of a reasonable person looking at Form R-380-1 is inconsequential if nothing on the face of the purchase order indicates that a reasonable person should look at Form R-380-1."); *see also* Tex. Bus. Com. Code § 1.201(10) (defining conspicuous as written, displayed, or presented such that a reasonable person against which it is to operate

13

ought to have noticed it). Further, the Price Authority, which is 21 pages, is "not so short that every term in the contract[] must be considered conspicuous." *See Dresser Indus., Inc.*, 853 S.W.2d at 511.

Even if we assume the face of the contract includes the Price Authority and the 6100 Rules Book, the paragraph referencing the risk-shifting indemnity provision is nonetheless inconspicuous. The Price Authority is 21 pages, and the 6100 Rules Book is over 80 pages. The paragraph referencing the 6100 Rules Book is not displayed in a larger type, contrasting color, or in an otherwise distinguishable manner from the surrounding text. *See* Tex. Bus. Com. Code § 1.201(10). A reasonable person should not be expected to investigate the text of the Price Authority to locate the paragraph directing them to a general website; navigate the website to find the 6100 Rules Book; and then review the text of the table of contents, which is printed in the same respective size and type, to discover "Item 2265 – Liability and Indemnity"—the indemnity provision. *See U.S. Rentals, Inc.* 901 S.W.2d at 791 ("The conspicuousness requirement mandates that the indemnity agreement be noticeable to a reasonable person.") (citing *Dresser Indus., Inc.*, 853 S.W.2d at 508). Likewise, a reasonable person should not have to analyze the text of the 6100 Rules Book to locate the provision referencing the 90010 Rules Book, which is listed under section 1 entitled "General Rules and Regulations, Item 1160 – BNSF Published Signatureless Contracts." Moreover, neither the Price Authority nor the 6100 Rules Book advise the customer of where the 90010 Rules Book is located. "The intent of the fair notice requirements is defeated if parties are allowed to remove risk-shifting clauses to secondary documents that are only inconspicuously referenced on the face of the contract." *ALCOA*, 2005 WL 608232, at *9.

Accordingly, we concluded that the indemnity provisions contained in the

14

Rules Books are unenforceable as a matter of law. *See Dresser Indus., Inc.*, 853 S.W.2d at 509–10; *see also U.S. Rentals, Inc.*, 901 S.W.2d at 792.

## II. Actual Knowledge

In its summary judgment motion, Deacero asserts that the Rules Books fail to satisfy the conspicuousness requirement, even if the Rules Books were attached to the Price Authority. BNSF counters that the conspicuousness of the indemnity clauses is immaterial, and the clauses are nonetheless enforceable because Deacero had actual knowledge of the clauses. As discussed, in the absence of compliance with the conspicuousness requirement, actual knowledge is required. *See Reyes*, 134 S.W.3d at 192. In order to succeed on its motion for summary judgment on the basis of actual knowledge, BNSF had to conclusively show that Deacero had actual knowledge of an indemnity provision as a matter of law. *See* Tex. R. Civ. P. 166a(c); *City of Richardson*, 539 S.W.3d at 259. But, to be entitled to the denial of Deacero's motion for summary judgment, BNSF, as the non-movant, only had to demonstrate that there was a genuine issue of material fact regarding Deacero's actual knowledge of the indemnity clauses. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018).

BNSF maintains that Deacero had actual knowledge of the indemnity provisions. BNSF presented evidence that Deacero's representative conceded that the Rules Books were incorporated into the Price Authority and that the Price Authority was subject to the Rules Books. To support its contention, BNSF emphasized Deacero's attempts to comply with certain provisions of the incorporated documents. BNSF also presented evidence on its course of dealings with Deacero. The evidence established that Deacero and BNSF had entered into similar agreements on at least 40 occasions over several years, and each prior agreement contained contractual indemnity provisions identical to those in the Price Authority.

15

While it is undisputed that the parties have entered into similar agreements over several years, the summary judgment evidence fails to conclusively establish that Deacero had actual knowledge of the risk-shifting indemnity provision located on BNSF's general website during its course of dealings with BNSF. *See City of Richardson*, 539 S.W.3d at 259; *see also Mo. Pac. R.R. Co.*, 86 S.W.3d at 791 (providing that the burden of establishing actual knowledge is on the party seeking indemnification). Further, BNSF did not present any summary judgment evidence that it specifically brought the inconspicuous waiver to Deacero's attention. *Cate*, 790 S.W.2d at 561. But, the summary judgment evidence certainly does raise a fact question regarding Deacero's actual knowledge of the indemnity provisions. *See Goodyear*, 565 S.W.2d at 919.

Accordingly, we sustain Deacero's first issue contending that the trial court erred in granting BNSF's motion for summary judgment, but overrule Deacero's second issue, alleging that the trial court erred in denying its motion for partial summary judgment.

## *Conclusion*

We reverse the trial court's order granting BNSF's motion for summary judgment and remand the case to the trial court for further proceedings.

/s/ Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Poissant.

16